UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:08cr253(WWE) |
| | : | |
| v. | : | |
| | : | |
| EDGARDO SENSI | : | FEBRUARY 16, 2010 |

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTIONS TO DISMISS OR IN THE ALTERNATIVE TO SUPPRESS**

On or about December 5, 2008, a federal grand jury sitting in Bridgeport returned an Indictment against the defendant, Edgardo Sensi ("Sensi"). The Indictment charged that in or about 2001, Sensi conspired to produce child pornography and that he produced child pornography. Essentially, Sensi, along with a co-conspirator, abused an approximately eight-year-old child, and filmed the abuse. Subsequently, in or about April 2, 2009, a grand jury returned a Superseding Indictment charging Sensi with additional counts relating to the production of child pornography and sex tourism charges involving Sensi's abuse of a four-year-old child in Nicaragua.

On January 19, 2010, defendant filed a motion to suppress seeking to dismiss the Indictment claiming that the 2001 conduct is time-barred under the applicable statute of limitations. As set forth in detail below, this crime is not time barred and Sensi's claim that this Court should not rely on 18 U.S.C. section 3283 which extended the statute of limitations for federal sex exploitation crimes involving children is unavailing and should not be considered.

Alternatively, Sensi seeks to suppress the physical evidence seized from his home. Sensi claims that the video-tapes depicting Sensi sexually abusing children, including M.V.#1 and M.V. #2, were not within the four corners of the warrant. Sensi's claim that the videos were not

somehow covered by the warrant are patently absurd and should be dismissed in their entirety. The plain language of the search warrant which was authorized by a Florida state court judge permitted law enforcement agents to search for and seize *any* images or video of child pornography. Moreover, Sensi consented to the seizure of a black duffel bag which contained the video-tapes that depicted Sensi sexually abusing the minor victims in this case. Accordingly, both motions should be dismissed in their entirety.

I.   **FACTUAL BACKGROUND**

On or about August 27, 2008, while conducting an online undercover Peer2Peer File Sharing[1] internet investigations, Detective Brian Broughton, located a computer with a specific IP Address. The user of that IP address had movie files that had previously been identified as child pornography in other investigations conducted by Officer Broughton. Officer Broughton then utilized available law enforcement databases and was able to determine that the particular IP address had been associated with several other images and videos of child pornography. Officer Broughton served a subpoena on the subscriber for that specific IP address and was able to determine that the individual associated with the IP address was Edgardo Sensi and the address that the service was connected to was 2750 NW Windemere Dr., Jensen Beach, FL 34957 .

Based on this and other information, Officer Broughton lawfully sought and obtained search warrant to search Sensi's residence. A state judge determined that Broughton had probable cause to search Sensi's residence for evidence of child pornography. This included but was not limited to any videos or images of child pornography. Broughton's affidavit sets forth

---

[1] Peer to peer ("P2P") file sharing networks are frequently used to trade digital files of child pornography. These files include both image and movie files.

2

his considerable experience relating to the sexual exploitation of children as well as his experience involving the use of the internet to sexually exploit children. The affidavit also sets forth in some detail, the programs Sensi utilized on his computer to obtain (and share) child pornography. Based on their training and experience, members of law enforcement who are experienced in cases involving the sexual exploitation of children, like Officer Broughton, are aware that most individuals who collect pornography do not simply collect one or two movie files. Rather, they obtain and possess a variety of child pornography on a variety of mediums. Therefore, the affidavit sets forth the videos of child pornography accessed by the IP address associated with Sensi. In addition, the search warrant authorized law enforcement to search for any and all images and videos of child pornography. The search warrant and accompanying affidavit are attached as Exhibit A to this memorandum. Paragraph 1 of the property to be seized provides:

>  1.  Images, movies, or visual depictions of sexual conduct or sexual performance by a child or children. . .

The warrant goes on to provide that law enforcement was authorized to seize any type of :

>  4.  Computer storage media and the digital content to include but not limited to floppy disks, hard drives, tapes, DVD disks, CD-ROM disks or other magnetic, optical or mechanical storage . . .

The warrant therefore clearly and explicitly authorized law enforcement to search the premises as well as seize any visual depictions of child pornography. Clearly, the tapes at issue here are videos depicting Sensi sexually molesting very young children. There is simply no issue that law enforcement was entitled to seized this material.

Moreover, the language of the search warrant clearly goes on to provide law enforcement

with the authority to seize child pornography. Based on the affidavit, it is clear that law enforcement was specifically looking for videos of child pornography. Indeed, the search warrant itself references the two movies of child pornography that Officer Broughton was able to associate with Sensi's IP address.

As described in the warrant, one movie was a 5 minute 17 second video file depicting a nude prepubescent female child, spreading her vagina and anus. Later in the video clip, an adult male is observed sodomizing the female child with his penis.

The second video file is an approximately 44 second video for a prepubescent girl performing oral sex on an adult male, who places his penis between the legs of a stuffed teddy bear.

On or about September 10, 2008, members of law enforcement, including Officer Broughton, approached Sensi's residence and identified themselves. During a brief interview with Sensi, Sensi was evasive about what was on his computer. Sensi did state that 15-year-old son occasionally visits him and may have used Sensi's computer but denied that his son would access child pornography. Sensi ultimately denied possessing or viewing child pornography himself. The search warrant was then executed. A girlfriend who appeared to reside at the location was also present during the search.

As noted above, officers were searching for any evidence of child pornography. When law enforcement entered the premises, they had no information that Sensi was himself producing child pornography. During the search of the home, several items were seized including a laptop, stacks of compact disks, with handwritten labels. One label was titled "PTHC". This acronym is familiar to law enforcement in child exploitation investigations as referring to Pre-Teen

Hardcore. Several CD's were also seized with hand written labels. Several boxes of pornography were observed in Sensi's closet. Inside the boxes were Hi8 video cassettes with handwritten labels. Several Hi8 videotapes were labeled with a hand-written female name and then the acronym XXX which raised concerns for law enforcement. The hand-written labels indicated that the tapes were not commercial and the "XXX" clearly indicated pornography. The handwritten labels with female names as well as the XXX signaled to law enforcement that Sensi was likely producing pornography. During the search, law enforcement also located two duffle bags. Both were located in Sensi's closet. One was a big red duffle bag. It was located on the bottom right-hand floor of Sensi's closet. Several Hi8 video-tapes were located in that bag. The red duffle bag contained adult pornography as well as additional Hi8 tapes which markings that included M.V. #2's first name "XXX" and dates which corroborate his dates of travel to Nicaragua. These videos include Sensi abusing the four-year-old girl and also contain other sex acts with an adult females. Other Hi8 tapes were located in a box where a vibrator was also located. There was also a black duffle bag with a lock on it which was located in Sensi's bedroom in his closet. Officer Broughton will testify that he did not want to seize the black back if it didn't contain anything pertinent to his investigation so he specifically asked Sensi if he had a key to the bag and. Sensi looked at him and told him that he did not have a key to the black duffle bag.[2] When Officer Broughton asked Sensi what was in the bag, Sensi replied "take it, it's porn."[3] During this conversation Sensi appeared to be both nervous and sweating. When Officer

---

[2]   The key to the black duffel bag was later recovered from Sensi's employer.

[3]   Officer Broughton has been deposed by Sensi's counsel in Florida as part of the Florida state case against Sensi. In his deposition, Officer Broughton was asked about his conversation with Sensi regarding the black duffel bag. A copy of the deposition transcript has been made available to Sensi. At the Court's request, the Government will provide a copy of this

Broughton asked Sensi why he was sweating, Sensi replied that he was diabetic. In light of the fact that some of the tapes had hand-written labels and were marked with "XXX," and Sensi's admission that the tapes in the black bag were pornography, Officer Broughton properly seized the black bag.

Once the black bag was opened, the officers located Super8 videos inside the bag labeled with M.V.#1's first name. They also located a box of up to 50 floppy disks, some of which contained child pornography. The videotapes identified with M.V. #1's first name depicted Sensi and the co-conspirator engaged in sex acts with M.V. #1. The agents located other video-tapes of child pornography, including tapes of Sensi engaged in sexually molesting other children. The agents also found a stack of printed test stories dealing with incest and child pornography. There was also a booked called "Puppetry of the Penis" which depicted different ways to manipulate a penis.

During their search, the agents also located a video-camera which utilized Hi8 tapes. In addition cables and wires for the Hi8 video-camera were also seized. Law enforcement agents will be able to testify that the images from these Hi8 tapes can be transferred onto a computer hard drive. Subsequently, officer Broughton contacted agents with Immigration and Customs Enforcement. Based on witness interviews and other information, ICE agents were able to determine that M.V.#1 resided in Fairfield County, Connecticut during the period of time that she was sexually abused. Agents were subsequently able to determine that M.V.#1 had moved with her family to Georgia. ICE agents were able to locate M.V. #1 as well the co-conspirator. ICE agents also were able to determine that M.V.#2 was being sexually abused in Nicaragua.

---

transcript to the Court.

Subsequently, ICE agents traveled to Nicaragua and were able to determine the location of the abuse and were also able to locate the very young child who had been abused by Sensi.

## II.     ARGUMENT

Sensi argues that law enforcement improperly seized evidence from his residence. More specifically, Sensi claims that law enforcement did not have authority to seize the videos of child pornography found at this residence. Sensi's claim is undercut by the language of the warrant. To the extent that Sensi wishes to claim that he did not provide, consent, his failure to provide an affidavit is fatal to his claim, see infra, and therefore the Court should not dismiss this claim without a further hearing.

### A.     Probable Cause

The Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause is "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (internal quotation marks omitted). "[P]robable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. "In assessing the proof of probable cause, the government's affidavit in support of the search warrant must be read as a whole, and construed realistically." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998).

"Courts do not isolate each factor of suspicion but instead look to the totality of the circumstances.  *United States v. Gagnon*, 337 F.3d 230, 236 (2d Cir. 2004) (citing *Gates*, 462 U.S. at 230-31).

A court reviewing the issuance of a search warrant "accord[s] 'great deference' to a judge's determination that probable cause exists[] and . . . resolve[s] any doubt about the existence of probable cause in favor of upholding the warrant." *Salameh*, 152 F.3d at 113; *United States v. Martin*, 157 F.3d 46, 52 (2d Cir. 1998).  The court's "duty is 'simply to ensure that the magistrate had a substantial basis for . . . conclud[ing]' that probable cause existed." *Salameh*, 152 F.3d at 113 (quoting *Gates*, 462 U.S. at 238-39).  "[T]he resolution of doubtful cases . . . should be largely determined by the preference to be accorded to warrants." *Martin*, 157 F.3d at 52 (internal quotation marks omitted).  "A reviewing court should not interpret supporting affidavits in a hypertechnical, rather than a commonsense manner." *Id.* (internal quotation marks omitted).

Here, any claim that the warrant did not permit the officers to search for and seize video-tapes of child pornography is specious.  The plan language of the warrant authorized a search for any images or videos of child pornography.  *See* Ex. A.  The entire warrant was based on a law enforcement officer's investigation that Sensi had videos of child pornography.  The fact that the law enforcement officers had no knowledge prior to conducting the search that Sensi was filming his abuse of children is unavailing.  Sensi made his own child pornography by video-taping his sexual abuse of children.  Since the officers were authorized to search for any evidence of child pornography, Sensi's homemade child pornography was clearly evidence.

### C. The Seizure of the Locked Black Bag Was Proper Because Sensi Voluntarily Consented to It.

Here, even if this Court were to find that Sensi's homemade child pornography was not included in the warrant, Sensi consented to the search of the black duffel bag where the tapes relating to M.V. #1 were located. It is well settled that a search conducted pursuant to a voluntary consent is one of the specifically established exceptions to the warrant requirement. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). To determine whether consent to a search is voluntarily given, a court must examine "the totality of all the circumstances" to ascertain whether the consent "was a product of that individual's free and unconstrained choice, rather than a mere acquiescence in a show of authority." *United States v. Garcia*, 56 F.3d 418, 422 (2d Cir. 1995) (citations and internal quotation marks omitted); *accord Schneckloth*, 412 U.S. at 226-27. "So long as the police do not coerce consent, a search conducted on the basis of consent is not an unreasonable search." *Garcia*, 56 F.3d at 422 (citing *Schneckloth*, 412 U.S. at 228).

Whether an individual has voluntarily given consent is a fact-based inquiry. *United States v. Peterson*, 100 F.3d 7, 11 (2d Cir. 1996); *United States v. Gandia*, 424 F.3d 255, 265 (2d Cir. 2005) ("The scope of the suspect's consent under the Fourth Amendment is a question of fact, and the government has the burden of proving, by a preponderance of the evidence, that a consent to search was voluntary") (internal quotation marks omitted). "In this circuit, the test [whether a consent to search was in fact 'voluntary'] is an objective one – whether the agents had a reasonable basis for believing that there was valid consent to the search." *United States v. Lavan*, 10 F.Supp.2d 377, 384 (S.D.N.Y. 1998) (citing the Second Circuit's decision in *Garcia*, 56 F.3d at 423); *see also United States v. Awan*, 2006 WL 3207858, *4 (E.D.N.Y. Nov. 6, 2006).

9

"The district court's finding that consent was given voluntarily will not be overturned unless it is clearly erroneous." *Peterson*, 100 F.3d at 11 (citing *United States v. Hernandez*, 5 F.3d 628, 632 (2d Cir. 1993)).

Factors taken into consideration when assessing whether a defendant's "will was overborne" to render consent invalid include, *inter alia*, the age, intelligence, and education level of the defendant; whether the defendant is aware of his right to refuse consent; the length of the detention and the prolonged nature of any questioning; whether the defendant was threatened by any further action if he denied consent; whether law enforcement officers displayed a weapon; whether the defendant was under any physical restraint; and whether any physical punishment or deprivation occurred. *Schneckloth*, 412 U.S. at 226; *Hernandez*, 5 F.3d at 633 (fact that defendant was not threatened by any further law enforcement action if he denied consent supported finding that consent had been provided voluntarily); *United States v. Marin*, 669 F.2d 73, 83 (2d Cir. 1982) (fact that law enforcement officers did not display weapon to defendant supported finding that consent was voluntary). The prosecution is not required to demonstrate knowledge or advice of a right to refuse. *Schneckloth*, 412 U.S. at 248-49. No single factor is dispositive. *Id*. at 226-27. "[I]t is well settled that consent may be inferred from an individual's words, gestures, or conduct." *United States v. Buettner-Janusch*, 646 F.2d 759, 764 (2d Cir. 1981). Consent can be voluntarily given even if a defendant is under arrest. *See Crespo*, 834 F.2d at 271.

Here, during the search of Sensi's apartment, Officer Broughton specifically asked about the locked black duffel bag because officers were not interested in seizing the bag unless it had evidence pertinent to their investigation. Sensi, who is a well educated individual, clearly understood what the officers were searching for. Prior to the search, the officers had a

10

conversation with Sensi about the programs on his computer and whether he had accessed child pornography. Further, the officers had provided Sensi with a copy of the warrant and so he was a clearly on notice as to what the officers were searching for.

Sensi's consent was voluntary. "So long as the police do not coerce consent, a search conducted on the basis of consent is not an unreasonable search." *Garcia*, 56 F.3d at 422 (citing *Schneckloth*, 412 U.S. at 228). There is simply no claim and no support for any clam that the consent was a product of coercion. There was no prolonged questioning, no use of physical punishment or deprivation. No guns were drawn during the search in the bedroom, no threats were made about consequences if he failed to consent, no voices were raised. Sensi was not placed under arrest. Indeed, Sensi was under no constraint whatsoever. *See, e.g., Crespo*, 834 F.2d at 271 (consent can be voluntarily given even if a defendant is under arrest or handcuffed).

### D.     Defendant Has Not Made a Showing to Warrant an Evidentiary Hearing

The defendant has submitted no affidavit in support of his motion or provided any details in support of his claim.

It is well-settled in the Second Circuit that a defendant seeking to suppress evidence bears the burden of demonstrating disputed issues of fact that would justify an evidentiary hearing. See United States v. Culotta, 413 F.2d 1343, 1345 (2d Cir. 1969); United States v. Castellano, 610 F. Supp. 1359, 1439 (S.D.N.Y. 1985). The defendant's burden is not satisfied by "conclusory, non-particularized allegations of unlawful official behavior." United States v. Tracy, 758 F. Supp. 816, 820 (D. Conn. 1991). Rather, the showing required to justify a hearing must be made by an affidavit of someone with personal knowledge of the underlying facts – an attorney's declarations are insufficient. United States v. Gillette, 383 F.2d 843, 848-49 (2d Cir. 1967) (affidavit by defense attorney in support of motion not based on attorney's personal knowledge

11

insufficient to create factual issues to be resolved at evidentiary hearing); United States v. Caruso, 684 F. Supp. 84, 87 (S.D.N.Y. 1988) (same).

As Judge Mansfield noted in United States v. Garcia, 272 F. Supp. 286, 290 (S.D.N.Y. 1976):

> Experience shows that unless such serious charges are initiated upon the sworn statement of persons having personal knowledge of the facts, a great deal of time of the parties and the Court is frequently wasted upon unnecessary, expensive and protracted suppression hearings, all for the reason that the attorney demanding suppression merely upon his own say-so often discovers only at the hearing that he had been misled by unsworn misrepresentations of his clients, which they would be unwilling to swear to in an affidavit, particularly if they were questioned closely by their counsel and warned of the consequences of perjury.

Id. at 290.  Accordingly, a motion to suppress that suggests that the factual circumstances are different from those set forth in the incident report and related evidence, but is not supported by an affidavit of someone with personal knowledge of those facts, should appropriately be considered without an evidentiary hearing.  See, e.g., United States v. Ruggiero, 824 F. Supp. 379, 393-94 (S.D.N.Y. 1993); United States v. Sierra-Garcia, 760 F. Supp. 252, 264-65 (E.D.N.Y 1991) (citing United States v. Gillette, 383 F.2d at 848-49; United States v. Gregory, 611 F. Supp. 1033, 1044 (S.D.N.Y. 1985)); United States v. Viscioso, 711 F. Supp. 740, 745 (S.D.N.Y 1989); United States v. Caruso, 684 F. Supp. at 87; United States v. Vasta, 649 F. Supp. 974, 986 (S.D.N.Y. 1986).

Indeed, courts in the District of Connecticut have repeatedly recognized that a motion to suppress based upon purportedly contested factual issues, but not supported by an affidavit by someone with personal knowledge of those facts, should be considered without a hearing.  See, e.g., United States v. Renaldo Rose, 3:03CR33(EBB), 2004 WL 78060 at *5 (D. Conn. Jan. 9, 2004):

> The defendant claims that the officers conducting the search went beyond the scope of the warrants by "rummaging through all of the defendant's (and other's who lived in the house) possessions." (Def.'s Mot. to Suppress at 14). Beyond this conclusory statement, however, the defendant fails to offer any evidence that the executing officers transformed the search into a "general seizure." Further, the defendant filed no affidavit reciting any supporting facts to his conclusory allegations of wrongdoing. The Second Circuit has made very clear that a defendant seeking to suppress evidence bears the burden of demonstrating disputed issues of fact that would justify an evidentiary hearing. See United States v. Culotta, 413 F.2d 1343, 1345 (2d Cir. 1969). *The required showing must be made by an affidavit from an individual with personal knowledge of the underlying facts.* See United States v. Ruggiero, 824 F. Supp. 379, 393-94 (S.D.N.Y. 1993) (finding a motion to suppress not supported by the proper affidavit may be denied without a hearing.).

Rose, 2004 WL 78060 at *5 (emphasis added); see also United States v. Diaz, 303 F. Supp. 2d 84, 93-94 (D. Conn. 2004):

> [D]efendant filed no affidavit reciting any supporting facts to his assertion that the events in question occurred differently than attested to in the Police Report. The Second Circuit has made very clear that a defendant seeking to suppress evidence bears the burden of demonstrating disputed issues of fact that would justify an evidentiary hearing. See United States v. Culotta, 413 F.2d 1343, 1345 (2d Cir. 1969). *The required showing must be made by an affidavit from an individual with personal knowledge of the underlying facts.* See United States v. Ruggiero, 824 F. Supp. 379, 393-94 (S.D.N.Y. 1993) (finding a motion to suppress not supported by the proper affidavit may be denied without a hearing). *Because defendant has provided no such affidavit and there is no basis for suppressing such evidence on the existing record, defendant's request for oral argument is denied.*

Diaz, 303 F. Supp. at 93-94 (emphasis added).

Sensi claims that there was no probable cause to seize the evidence from his residence and that he did not consent to the search of the black duffel bag. In the absence of any affidavit, Sensi has utterly failed to meet his burden of establishing disputed issues of material fact sufficient to trigger an evidentiary hearing, and the Court may consider the motion to suppress based on the record as it exists.

Indeed, what is obvious from Sensi's motion papers is that he wants an evidentiary hearing so he can cross-examine the government's witnesses. Despite his transparent desire to

13

depose government agents prior to trial, Sensi can not demand an evidentiary hearing to conduct a fishing expedition.  Rather, as the aforementioned case law amply demonstrates, Sensi is required to submit an affidavit to obtain a hearing.

### D.     The Statute of Limitations on the 2001 Conduct has Not Expired

The statute of limitations applicable to the instant offenses is 18 U.S.C. § 3299, which states:

> Notwithstanding any other law, an indictment may be found or an information instituted at any time without limitation for any offense under section 1201 involving a minor victim, and for any felony under chapter 109A, 110 (except for section 2257 and 2257A), or 117, or section 1591.

Section 3299 went into effect on July 27, 2006 as part of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 211, 120 Stat. 587 (July 27, 2006) ("Adam Walsh Act").  The charges relating to production of child pornography all are part of chapter 110.

While an expired statute of limitation cannot be revived by statute, statutory changes to a statutes of limitations can apply to crimes that have already taken place so long as the original statute of limitation was still running.  *Stogner v. California*, 539 U.S. 607, 618 (2003) (if prior limitations period has not expired, enlargement of that period does not violate ex post facto clause).  Therefore, Section 3299 applies to the charges so long as the statute of limitations was still running on July 27, 2006, the date the statute was created.

Prior to the passage of the Adam Walsh Act, the statute of limitations for sexual offenses involving minor victims was dictated by 18 U.S.C. § 3283.  Section 3283 has undergone a number of legislative changes within the past few years set forth below:

1.     Prior to November 29, 1990, there was no specific statute of limitations for child sex offenses.

14

2. On November 29, 1990, 18 U.S.C. § 3509(k) became law, extending the statute of limitations for an offense that "involv[es] the sexual or physical abuse of a child" until the victim reaches age 25.

3. On September 13, 1994, Section 3509(k) was re-codified at 18 U.S.C. § 3283.

4. On April 30, 2003, Section 3283 was amended so that the statute of limitations for an offense that involves the sexual or physical abuse of a child runs for the life of the child.

5. On January 5, 2006, Section 3283 was amended again so that the statute of limitations for an offense that involves the sexual or physical abuse of a child expires 10 years after the offense or runs for the life of the child, whichever is longer.

Given this history, the applicable statute of limitation at the time of the offenses was until the victims reached age 25, and then was extended to ten years from the date of the offense or the life of the victims, whichever was longer. This means that the statute of limitations for any offenses that may have occurred in 2001 was still running on July 27, 2006, the date that the Adam Walsh Act which eliminated the statute of limitations altogether.

The limitations language that later became Section 3283 was originally codified in 1990 as part of 18 U.S.C. § 3509, which contains provisions relating to the rights of child victims and witnesses. *See* Crime Control Act of 1990, Pub.L.No. 101-647, 1990  3266 (1990). Subsection 3509(k) provided that:

> No statute of limitations that would otherwise preclude prosecution for an offense involving the sexual or physical abuse of a child under the age of 18 years shall preclude such prosecution before the child reaches the age of 25 years.

In addition to this language in subsection (k), Section 3509 contains a definition of "sexual abuse" that applies to the entire section. 18 U.S.C. § 3509(a)(8). Sexual abuse, as defined by Section 3509 in 1990 and today, includes:

> the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage in, sexually explicit conduct or the rape, molestation, prostitution or other form of sexual exploitation of children, or incest with children.

18 U.S.C. § 3509(a)(8).

In 1994, the statute of limitations language of Section 3509(k) was moved, verbatim, into Chapter 213, entitled "Limitations Periods," as Section 3283.  *See* Violent Crime Control and Law Enforcement Act of 1994, Pub.L.No. 103-322, 108 Stat. 1796 (1994).  Section 330018 of Public Law 103-322 was entitled "Repeal of superfluous statute of limitation and transfer of child abuse statute of limitation."  In other words, in 1994, Congress simply moved the statute of limitations for sexual abuse cases from the child victims' rights section of the criminal code to the limitations chapter of the code, amending Section 3283 to contain the statute of limitations language, and repealing the provision from § 3509(k) as a "conforming repeal."  *Id.*

In 2003, Congress again enlarged the limitations period for child sexual abuse crimes, amending Section 3283 to allow for prosecution not just until the child reaches the age of 25 years, but for the entire "life of the child."  *See* Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act, Pub.L.No. 108-21, 117 Stat. 660, Title II, § 202 ("No statute of limitations for child abduction and sex crimes") (April 30, 2003).  Three years later, Congress again enlarged the statute of limitations for child sex abuse crimes.  18 U.S.C. § 3283; *see also* Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub.L.No. 109-162, 119 Stat. 2960, § 1182 (January 5, 2006).  While twice enlarging the statute of limitations, Congress never changed the relevant language referring to the sexual abuse or exploitation of a child, and did not create a new definition of sexual abuse or exploitation.  It follows that the term "sexual abuse" in 18 U.S.C. § 3283 can be understood only by reference to

the definitions of exploitation and sexual abuse that is found in 18 U.S.C. § 3509.

### III. CONCLUSION

For the foregoing reasons, defendant's motion to suppress and to dismiss should be denied.

Respectfully submitted,

NORA R. DANNEHY
ACTING UNITED STATES ATTORNEY

/S/
KRISHNA R. PATEL
ASSISTANT UNITED STATES
ATTORNEY
United States Attorney's Office
915 Lafayette Boulevard
Bridgeport, CT 06604
(203) 606-3000
Federal Bar Number ct24433

**CERTIFICATE OF SERVICE**

        This is to certify that on February 16, 2010, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/
KRISHNA R. PATEL
Assistant United States Attorney